IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNA MARY ANDALIS | : | CIVIL ACTION |
|     Plaintiff | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
|     Defendant | : | NO. 23-2000 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                         January 24, 2024

      Jenna Mary Andalis ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is granted.

### I.    PROCEDURAL HISTORY[2]

      On May 3, 2021, Plaintiff applied for DIB and SSI, alleging that her disability commenced on January 1, 2009.[3] R. 17. The claims were denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing. R. 17. On July 6, 2022, because of COVID-19 precautions, Plaintiff appeared for a telephonic hearing, before Marc Silverman, Administrative Law Judge ("the ALJ");

---

[1] Martin O'Malley became Commissioner of the Social Security Administration, on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit. No further action need be taken to continue this suit, pursuant to the last sentence of 42 U.S.C. § 405(g).

[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

[3] At the administrative hearing, Plaintiff amended her alleged onset date to October 10, 2019. R. 42-43.

Plaintiff, represented by an attorney, and Edith Edwards, a vocational expert, ("the VE") testified at the hearing. R. 17. Applying the sequential evaluation process ("SEP"),[4] the ALJ denied Plaintiff's claims, on August 9, 2022. R. 17-31. Plaintiff's request for review with the Social Security Administration's Appeals Council was denied, on April 26, 2023. R. 1-3. She presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on June 25, 1992, R. 29, was 30 years old when the ALJ rendered his decision. She lives with her parents, newborn child, and three-year old. R. 47. Plaintiff moved in with her parents and her mother quit her job, because Plaintiff could not take care of her children on her own. R. 47.

---

[4] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

B.     Plaintiff's Testimony

At the July 6, 2022 administrative hearing, Plaintiff testified about the limitations caused by her narcolepsy[5] with cataplexy. R. 45-57. Narcolepsy prevents her from sleeping well; day or night, she constantly transitions from being awake to being asleep. R. 54.

Plaintiff naps every two hours in order to minimize the onset of cataplexy; her naps last for approximately 30 minutes and Plaintiff dreams whenever she is asleep. R. 45, 53-54. In addition, whenever Plaintiff eats, she must nap right away, R. 45, because eating typically causes her to fall asleep. R. 52-53. If she showers or attempts to cook, someone must be with her, lest cataplexy cause her to fall. R. 45. In between naps, Plaintiff has a two-hour window in which she is able to function. R. 46.

Plaintiff has treated with sleep disorder specialists for 10 to 15 years; at her initial evaluation, doctors advised that her case was the worst they had ever seen. R. 49-50. Over the years, Plaintiff has tried approximately 10 different medications to treat her condition. R. 50. Some of the medications prescribed to treat her cataplexy caused her to hallucinate and have panic attacks. R. 50. Plaintiff scratched at her skin, causing injury, because she thought there were bugs under her skin; she has visited the hospital three times because of these medication-induced hallucinations. R. 50. The last medication Plaintiff tried, Xyrem,[6] triggered anxiety, depression and mental breakdowns; therefore, she has declined further medication. R. 50-51. The beneficial

---

[5] Narcolepsy is a sleep disorder that makes people very drowsy during the day; people with this condition find it difficult to stay awake for long periods of time and fall asleep suddenly. https://www.mayoclinic.org/diseases-conditions/narcolepsy/symptoms-causes/syc-20375497#:~:text=Narcolepsy%20is%20a%20sleep%20disorder,problems%20in%20their%20daily%20routine.
(accessed January 16, 2024). People with narcolepsy may also experience cataplexy, which is a sudden loss of muscle tone and can cause slurred speech or complete weakness of most muscles. *Id.* There is no known cure for narcolepsy or cataplexy. *Id.*

[6] Xyrem is a medication that treats narcolepsy and cataplexy by reducing activity in the brain. https://medlineplus.gov/druginfo/meds/a605032.html (accessed on January 16, 2024). Xyrem has significant side effects and is not available from retail pharmacies and is only available *via* a restricted distribution program. *Id.*

effects of prior medications lasted a few months before her mental health problems emerged. R. 51.

Plaintiff experiences cataplexy 10 times a day; an attack usually causes her chin to droop. R. 51. Approximately once or twice bi-weekly, she falls to the ground, if she is standing, she collapses onto one side of her body, if she is sitting. R. 51-52. As a result of the cataplexy-induced chin dropping, Plaintiff experiences constant neck pain. R. 52.

Plaintiff, at most, can sit for 20 to 30 minutes; any longer risks her falling asleep. R. 54. After a nap, Plaintiff estimated that she could stand still for approximately 30 minutes; if she was moving around, she could be on her feet longer. R. 54. She is able to perform household chores during the two-hour windows between her naps. R. 55. Plaintiff is forgetful and has a poor memory; she noticed this problem when she worked as a waitress years ago. R. 55-56.

C.    Vocational Testimony

The VE characterized Plaintiff's past pharmacy technician job as a semi-skilled,[7] light[8] position. R. 58. The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience, who was limited to light work, with additional limitations: can climb ramps frequently and stairs occasionally, but never climb ladders, ropes and scaffolds; can never be exposed to unprotected heights and dangerous moving mechanical parts; cannot operate a motor vehicle as part of work responsibilities, such as a delivery driver; is limited to simple tasks in a routine environment; can have no more than frequent interaction with supervisors, co-workers, and the general public; is limited to low stress work, which is defined as routine work with no

---

[7] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

more than occasional changes in the work. R. 58-59. The VE opined that this individual could not perform Plaintiff's past work but could perform three alternative jobs: (1) checker, 30,000 positions in the national economy; (2) housekeeping cleaner, 98,000 positions in the national economy; and (3) routing clerk, 39,000 positions in the national economy. R. 59. Next, the ALJ asked the VE to consider the same person, with the additional limitation that she would be off-task 5% of the workday. R. 60. The VE responded that, although this individual could not perform Plaintiff's past work, they still could perform the three alternative jobs she had identified. R. 60-61. The VE noted that the Dictionary of Occupational Titles ("DOT") did not address off-task tolerances, however, she had personal experience with this limitation. R. 61. The VE opined that employers would not tolerate a worker being off-task more than 10% of the workday. R. 61.

Plaintiff's attorney asked the VE to consider the same person as in the first hypothetic, but needing to lie down at unpredictable intervals, two or three times a day for 20 to 30 minutes each time. R. 60-61. The VE opined that this limitation was work-preclusive. R. 61.

### III.  THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since October 10, 2019, the amended alleged onset date (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairment narcolepsy with cataplexy (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can climb ramps frequently and stairs occasionally, but never climb ladders, ropes and scaffolds; can never be exposed to unprotected heights and dangerous moving mechanical parts; cannot operate a motor vehicle as part of work responsibilities, such as a delivery driver; she is limited to simple tasks in a routine environment; she can have no more than frequent interaction with supervisors, co-workers, and the general public; she is limited to low stress work, which is defined as routine work with no more than occasional changes in the work; and the individual will be off-task 5% of the 8-hour work day.

6.  Plaintiff is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  [Plaintiff] was born on June 25, 1992, and was 27 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date (20 CFR 404.1563 and 416.963).

8.  [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 10, 2019 through the date of this decision (20 CFR 404.1520(g), 416.920(g)).

R. 19-22, 29-30.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

7

§ 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.  Review of the Administrative Law Judge's Decision

Applying the SEP, the ALJ determined that, although Plaintiff could not perform her past relevant work, there were three, light, unskilled jobs she could perform and, hence, was not disabled. R. 17-31. Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by misunderstanding the nature of her narcolepsy with cataplexy and, consequently, failing to appreciate how debilitating it is. Pl. Br. at 3-11. The Commissioner denies Plaintiff's assertions. Resp. at 1-17. This court finds that the ALJ failed to understand Plaintiff's condition and this serious misunderstanding caused him to commit reversible error.

Plaintiff cites the Social Security Administration's Program Operations Manual System ("POMS") and notes that narcolepsy with cataplexy will not yield physical abnormalities or

8

abnormal laboratory studies, other than abnormal sleep studies. Pl. Br. at 7 (citing POMS DI-24580.005). The POMS is publicly available, *see Hess*, 931 F.3d at 213 n.15; hence, the ALJ should have been aware of the provision Plaintiff cites. This provision makes it clear, that Plaintiff appearing normal at medical appointments and her normal test results – except for the 2013 sleep study which was used to diagnose her narcolepsy with cataplexy (R. 341-42) – were entirely consistent with her condition.

In his decision, the ALJ determined that Plaintiff's testimony about her narcolepsy and cataplexy was undermined by a lack of objective medical evidence to support it. R. 23. However, this is precisely the type of evidence that POMS DI-24580.005 instructs the ALJ not to have expected to find. His failure to appreciate this, as well as the nature of Plaintiff's condition, which the POMS provision would have elucidated for him, caused the ALJ to discredit Plaintiff's testimony for an impermissible reason; this error renders the ALJ's decision fatally flawed. *See Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (holding that an ALJ cannot reject evidence for an incorrect reason).

The ALJ rejected the opinions in Dr. Khoury's April 2021 Residual Functional Capacity Questionnaire because they were not supported by his treatment notes, which revealed normal examination findings. R. 27-28. However, this justification is flatly precluded by POMS DI-24580.005. Again, the ALJ has rejected evidence for an incorrect reason, which is impermissible. *Mason*, 994 F.2d at 1066.

The ALJ's errors are harmful because Plaintiff testified to requiring repeated naps during the day, every two hours, to stave off cataplexy. R. 45, 53-54. Similarly, Dr. Khoury opined that Plaintiff would have approximately eight sleep attacks per day, lasting 30 minutes each. R. 477. Per the VE's testimony, this level of napping and/or sleeping during the workday is inconsistent

9

with maintaining employment. R. 61. Hence, this case must be remanded so that the ALJ can reconsider whether to accept Plaintiff's testimony about her need to nap during the day and Dr. Khoury's opinions concerning Plaintiff's frequent sleep attacks. Once the ALJ does so, he must determine anew whether Plaintiff is disabled.

    An implementing order and order of judgment follow.